Aaron Johnson
PRO SE
646 West 500 North
Telephone: (202) 819-3814
Email: pentasys@msn.com

FILED
U.S. DISTRICT COURT

2018 MAY -3  P 3: 53

DISTRICT OF UTAH

BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| AARON J. JOHNSON<br><br>PLAINTIFF,<br>VS.<br><br>LT. GOVERNOR SPENCER COX<br>IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>UTAH ATTORNEY GENERAL SEAN D REYES IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>WADE FARRAWAY IN HIS INDIVIDUAL CAPACITY;<br><br>DAN BURTON IN HIS INDIVIDUAL CAPACITY;<br><br>GARY HARTER IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>JAMES BEDINGFIELD IN HIS INDIVIDUAL CAPACITY<br><br>GENERAL COUNSEL, JOHN FELLOWS IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>UTAH SPEAKER OF THE HOUSE, GREG HUGHES IN HIS INDIVIDUAL CAPACITY;<br><br>DEFENDANT(S) | **PLAINTIFF'S MOTION AND MEMORANDUM TO RECUSE MAGISTRATE JUSTIN D. PEAD PURSUANT 28 U.S. CODE § 455(a)(b)(1)(5)(iii)**<br><br><br>CASE NO. 2:18-CV-00029-RJS<br><br>JUDGE ROBERT J SHELBY<br><br>MAGISTRATE JUDGE DUSTIN B. PEAD |

This motion comes before the court, concerning an alleged potential of institutional bias within the District of Utah's judiciary.



Utah lawmakers pick top Mormon church lobbyist to run office

Utah lawmakers on Wednesday recommended the Mormon church's chief lobbyist for a top job overseeing the Legislature's office that drafts laws,...

WASHINGTONPOST.COM

This case is not an attack on the Free Exercise of Religion which we rightfully enjoy and must be protected. It is a facial attack on the use of any specific religion, within a body of elected officials, as "government speech" where these defendants are alleged to have used personal and privately held bias brought into public office; too enforce a censorship policy on a designated public forum concerning of content and viewpoint.

"Historically, the Supreme Court has been inconsistent in dealing with this problem. At various times, the Court has either applied a broad or narrow application of the clause.

When the First Amendment was drafted, it applied only to the U.S. Congress. As such, state and local governments could abridge the Free Exercise Clause as long as there was no similar

provision in the state constitution. In 1940, the Supreme Court held in Cantwell v. Connecticut that, due to the Fourteenth Amendment, the Free Exercise Clause is enforceable against state and local governments (this act of using the Fourteenth Amendment as the vehicle through which the Court applies the Bill of Rights to the states is also known as the Incorporation Doctrine)." - https://www.law.cornell.edu/wex/free_exercise_clause

This cause of action concerns the plaintiffs growing complaints and seeking to bifurcate the current cause of action (case 2:18-cv-00029) as a matter striking directly at the outside professional intertwining of church and state issues alleged as corrosive to the unbiased performance of any judiciary proceeding, or hearing, on plaintiffs constitutionally plead these issues.

This case arrives for adjudication under what in Utah, is unique in the United States. Utah practices a form of dominant paradigm control, intertwined with the LDS corporation, actively involved in every aspect of supervisory control in Utah, as a material fact. No other District in the United States has the unique aspects of this state. This case underlies a direct challenge to this form of, alleged collusive and corrosive controlling bias and prejudice in any judicial proceeding.

This case as alleged is, in part, also alleged to occur out of an LDS bias and animus against this defendant being responsible for deprivations of Free Speech in the District of Utah;

The Honorable Magistrate, Dustin D. Pead's judicial profile, includes the following:

***His journey in the law began, as Judge Pead recounts it, with the privilege of being assigned as a missionary for the Church of Jesus Christ of Latter-day Saints (LDS) in Haiti from 1991 to 1993***

Plaintiff has also placed onto the docket of this case, substantial new pleadings seeking answers on material question of law as Federal Questions whose elements directly strike at the collusive entanglement of the LDS corporation within the government.

Plaintiff does not exercise confidence nor 'faith' in any supposed neutrality of any Magistrate or judge who arrives in office promoting a missionary credential—where these

credentials underlie known questions of loyalty tests and oaths to an outside professional organization as the LDS corporation.

### PLAINTIFF'S PLEADINGS [61, 62, 63] DECRY "THE ESTABLISHMENT CLAUSE" AS A FEDERAL QUESTION {ELEMENT] UNDERLYING WHAT IN THIS CASE—ARE KNOWN AND OF RECORD ADMISSIONS OF THE VIOLATION OF PLAINTIFF'S FREE EXERCISE CLAUSE VIOLATIONS CONCERNING SPEECH, PARTICIPATION AND REDRESS

The magistrate in this case should have naturally recused himself in these matters. This case concerns civil rights. Those who are name and captions are of one primary member of the same outside professional organization, with little exception.

Plaintiff gives judicial notice concerning the following items:

(1) under Federal Question Jurisdiction, within this current claim (2:18-CV-00029), the known association, undue influence, and proxy delegation of supervisory authority of authority within the Uta State capitol is evidenced by the LDS corporation use of five (5) full time lobbyists—also an alleged violation of IRS code under 501C3;

(2) the current director of the Utah Legislative affairs office, John Cannon, was formally a member of the LDS corporation's use of Cannon as one of (5) full time lobbyists – as its chief lobbyist.

(3) Defendant fellows is subordinate to Cannon in this Utah Legislative affairs office and is represented by counsel directed by John Cannons direct administration.

(4) The LDS corporation has enjoyed unfettered access and interaction with every aspect of Utah's PRIME rule making division as a material fact which in Utah, cannot be genuinely disavowed as an intertwining of LDS corporation and the apparatus of state government.

**Plaintiff has also provided NOTICE TO BIFURCATE CLAIMS AS A NEW CAUSE OF ACTION based upon the excessive commingling of outside non-governmental interest within state office portions of plaintiff underlying claim. These are aspects which require those not associated to LDS corporation having sworn allegiance under known bishop interviews where loyalty oaths are administered**

(5) Plaintiff calls into Federal Question Jurisdiction, within this current claim (2:18-CV-00029), the known association of the LDS corporation (LDScorp) as that outside professional organization creating a known, pervasive, undue influence the proxy delegation of authority, commingling its objectives and agendas within the Utah State Legislature being the governmental apparatus and body acting as the Utah State Legislature's rule making body.

(6) This is a substantial federal question of constitutional subject matter as an alleged violation of the First Amendment Establishment clause striking directly at those within this LDS corporation—mores at those within this judiciary and this case;

  a. As this notice relates to Magistrate Dustin P. Pead, the professional bias as a loyal member of LDS corporation in which Pead is known to donate a portion of his pre-tax income as a loyalty test, removes his ability to remain unmoved by the allegations and language employed by this plaintiff as an alleged material fact.

  b. Plaintiff has made the alleged plead as conspiracies against some of these defendants under 18 USC § 241, to deprive rights. Utah has a unique

5

      professional religiously based patronage system excusing high ranking member of its faith from public accountability.

  c. Utah knowingly employees a unique 'reach around system" to provide cover and protection to those loyal to LDS corporation. It is in operation globally. To state otherwise is disingenuous.

  d. While this plaintiff finds it sickening and unamerican—those loyal to LDS corporation find this reach around as a routine policy to affect a continued suspension of reality to the outside world concerning its loyalists accountability in public offices.

(7) Plaintiff is concerned this reach around has already occurred and may, allegedly be in play via email, communications by other members of LDS corporation through the lobbying administration of both John Cannons Office of Legislative Research and General Counsel as well as the unbridled arm of LDS corporation as an alleged material fact!

(8) This prior notice filed 2 May 2018 by Plaintiff [doc 62] seeks to enumerate additional supplemental Count(s) in the current case and to **bifurcated "religious test" claims under a new case heading** naming those known to Magistrate Pead as Mr. Christensen, John Cannon, Greg Hughes, Greg Hartley, Spencer Cox and the entity of the Office of Legislative Research and General Counsel et al.,

(9) In being named as co-conspirators, who conspired with these defendants to deprive rights as a constitutional deprivation under statutory violation – these allegations directly target this unique patronage system within Utah;

(10)   Plaintiff seeks to bifurcate additional claims related to the Establishment Clause as new alleged violation(s) arising under a FIVE part test of 42 U.S.C. § 1985(3) enforcing statutory rights being derived under federal statute, establishing *'Federal*

*Claim Jurisdiction, Federal Question and Federal Elements*' raised directly against the dominant paradigm in the District of Utah;

   a. **These federal elements are both actual and concrete in this District and, continue to be imminent for others, creating a public interest,** *as substantial federal elements of these persistent Federal Questions now constituted,* **which cannot be properly examined under a judicial bias;**

## DIMINISHED EQUITY IN THE DISTRICT OF UTAH HAS ALLEGEDLY ARRIVED UNDER RAY BRADBURY-EQUE FAHRENHEIT 451 TRIBUTE TO AN UNBRIDLED HYPOCRISY CONCERNING A SEPARATION OF CHURCH AND STATE UNIQUE TO UTAH.

Public forums are designated social forums whose exclusion concerns a Federal Question of bias as censorship; a removal from participation and wellbeing for others. Plaintiff's pleads these appropriate federal Questions invoked as § 1331 Federal Question Jurisdiction under Magistrate Pead—may this case be dismissed, as some loyalty test, to outside professional interests—alleged here now?

Plaintiff's case—despite already plead and known violations, as plead by State Executive defendants in [doc 38] p. 12– will this case suffer lack of accountability, or be stalled, or dismissed in whole—as a result of questioning the dominant religious paradigm in this 10th district court, for the District of Utah?

Everything that has occurred in this case, it's ten-year history of abuses without any accountability or examination—have been covered up by those loyal to this LDS corporation and its alleged pendant need to proselytize the world about "leading the nation" circulated from this District ad nosism by a well-connected, globally networked, system of loyalists to its own, ongoing, professional cause.

In the current cause of action, the inhumane treatment leading to a statutory cause of action concerning a censorship scheme, was initiated in 2012 by the same Executive Defendants office now rebranding itself as a "civil rights" office.

It began by admission of record in [doc 38] in this case as the Utah Attorney General's office. This subhuman treatment is ironically, still defended by the Utah Attorney generals "civil rights division" as an oxymoron bar none.

This court, having statutory authority to act—has yet to act--despite these known admissions in relation to ***post deprivation relief*** still not forthcoming in a case seeking to hold a significant number of high ranking members, of this outside professional organization in public office, accountable!

As cited in Plaintiff's [doc 62]

> ***"Post deprivation remedies in this case, in the absence of further relief, citing 28 U.S. Code § 2202, may be wholly inadequate where post deprivation remedies are all that due process requires and, any constitutional violation is "not complete until and unless [the government] provides or refuses to provide a suitable post deprivation remedy."*** *Hudson*, 468 U.S. at 533.

Refreshing the courts memory concerning Utah's blatant, ongoing deprivations, Defendants have already plead a material fact in the material issue of censorship in [doc 38] p. 12. For the recollection of this courts pleading, State Executive Defendants record on 6 MARCH 2018 was plead as follows;

a. *"Aaron Jones was banned from posting to the Utah Attorney Generals' Facebook Page on March 8th, 2012"* – at [doc 38] p. 12 ¶ 12 (decl., 5).
b. *"Aaron Jones was banned from posting to the Department of Veterans Affairs Facebook Page"* on May 22nd, 2013" at [doc 38] p.12 ¶ 12 (decl., 7)
c. *Aaron Jones was banned from posting to the Lt. Governor Cox's Facebook Page on December 7th, 2016"* – at [doc 38] p.12 ¶ 12 (decl., 6)
d. *"...an Aaron Jones account has been banned from all of the pages"* at [38] p.12 ¶ 12 state executive exhibits 5-7.

Despite this court having jurisdiction under 28 U.S.C. § 1331, 1343(1)(2)(3) and (4) under both 42 U.S.C. §§ 1983 and 1985 – **not one of the defendants have corrected these admitted to actions.**

8

**Instead, defendants rely upon the function of law to dismiss this case and their public accountability.**

I alleged here, defendants are reliant upon a reach around and rules of civil procedure to dismiss a case as a rules-based gamesmanship despite their admissions and merits of this case. They seek more so, under the case law written by Magistrate Pead, furnished by Legislative Defendants, and under the same loyalist bias.

**THIS NOTICE FURNISHED TODAY, ALSO FURTHER REINFORCES PLAINTIFF REQUEST FOR RELIEF UNDER THE DECLARATORY JUDGEMENT ACT AS APPROPRIATE – WHICH I BELIEVE WILL NOT BE FORTHCOMING UNDER MAGISTRATE PEAD BEING PRESSURED TO DISMISS THIS CASE BY THESE DEFENDANTS!**

**FEDERAL ELEMENTS UNDER ITEM (2) OF THIS NOTICE: VIOLATION OF THE ESTABLISHMENT CLAUSE**

Every citizens in this district suffer some form of diminished equity part of a comingled politico/religious patronage as un unabated, known, constitutional conflict of state, so visible and daily palpable in this district daily media.

Utah's known, uniquely based, yet rampant, church/state collusion – especially as cited here--strikes at the heart of "collusive" and corrosive elements substantial to federal questions, as federal elements, under which citizens in the District of Utah, such as Johnson in this current case, had been routinely silenced in their injuries—in violation of Federal Supremacy and constitutional law under which this current cause of action "arising under" both Article III, Section II of the Constitution and 28 U.S.C. § 1331 using the same phrase, "arising under," to define federal question jurisdiction within this notice.

In the word of Justice Keagan, "***When the citizens of this country approach their government, they do so only as Americans, not as members of one faith, or another. And that means that even in a partly legislative body, they should not confront government sponsored worship that divides them along religions lines***" – *Town of Greece v. Galloway* 572 U.S. \_\_\_ (2014). This is absolutely not the case in Utah.

These intertwined and commingled aspects of governance by proxy, are very topical Federal Question as unconstitutional – specifically conceding the federal question of social media "***under the Religion Clauses of the First Amendment, as the cumulative impact of the entire relationship arising under the statutes involves excessive entanglement between government and religion***" *Lemon v. Kurtzman* 403 U.S. 602 pp 611-625 (1971).

Acquiescing to it, knowingly, without those like Magistrate Pead, and others similarly situated, have not directly taken these issues on. This underscores an acquiescence of the problem second class citizens suffer under as it—creates, promotes and institutes a second hand citizenship in the District of Utah!

Named Defendants plead a comprehensive admission of these material acts of censorship vis-à-vis this case in controversy. Where is the federal protection against a material deprivation against these rights? Plaintiff does not believe there will be any relief forthcoming in this case despite the plead deprivations!

Specific to Magistrate and others in this judiciary as it concerns the allegations of public forums, government speech that comingles sermonizing and government speech as one – in this case -- routinely polluted an allowable exchange of ideas as 'government speech' on "common exchange places" administered by public expenditure. The result is censorship of protected, permissible commentary and criticism as the free exchange of ideas" where in <u>Hawkins v. City &</u>

Cty. of Denver, 170 F.3d 1281, 1290 (10th Cir. 1999) ("Lee describes the reasonableness test as a factually-intensive, individualized inquiry.")

This notice of pleading robustly defends the concerns of this Plaintiff as more than valid, within this district, and any place a form of government is tasked to represent equally its citizens without any outside cultural bias as a conflicted obligation to these outside professional organizations, such as the LDS corporation, in creating this federal element of bias.

***Couldn't it be the reason for Plaintiffs muzzling as censorship and the economic injuries creating known hardships -- as an outside loyalty masquerading as a controlling state interest!***

As Justice Black stated in *Mills v. State of Alabama*, 384 U.S. 214 (1966), *"Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."* What then happens when 'governmental affairs" have become, as in Utah—the displacement of voice on public policy pitting refugees against Utah's own indigent as a known disparity of treatment?

### ONE POTENT PARTICULARIZED AND SPECIFIC EXAMPLE

That issue alone touched this plaintiff's own life quite harmfully and still ongoing as injuries-- in the denial of medical treatment after a vehicle accident with a criminal foreign national driving illegally a sixth time without insurance and under one of five known false identities. It continued as a—denied treatment every other non-documented person and refugee not denied treatment and not required to produce a state ID as I have been when I was denied treatment; with a broken hand and torn ligaments inter alia!

11

Those aspects were plead in [doc 48] in amended complaint in making a full pleading. Those aspects ar then an inconvenience to a state apparatus having committed these 14th amendment disparities denying an equal treatment to citizens and veterans not denied to non-citizens and refugees. It makes Magistrate Pead, as a missionary and loyalists to these state programs creating these disparities—less likely to understand how offensive these actions were which underlies the subsequent censorship and dismissal in complaining about it to those in the Utah statehouse!

The reasonableness test of asking for this action, concerns in Plaintiff's amended complaint, a lengthy, factually-intensive, individualized inquiry asserting the animus, hubris and indifference ongoing which created conditions leading to censorship and diminished equity in this District.

The admitted actions of State executive defendants in [doc 38] *continue to be wholesale excused and quite possibly acceptable to this judiciary.*

Plaintiff will continue to plead these actors actions and policies under which these actions occur, are toxic to this Republic and the public. These actions remain an *"egregious form of content discrimination," which is "presumptively unconstitutional"* see <u>Rosenberger</u>, 515 U. S., at 829-830,

> *("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject"). If the state defendant chooses or fails to self-limit or censor his personal religions beliefs on a public forum—they invite dissent and criticism of their own co-mingled viewpoints as "'[T]he First Amendment forbids the government to regulate speech in ways that favor some*

12

*viewpoints or ideas at the expense of others,'"* Lamb's Chapel v. Center Moriches Union Free School Dist., 508 U. S. 384, 394 (1993).

With specificity under Fed. R. Civ P. 8, plaintiff will continue to call out those who sermonize the world via a public, tax payer subsidized state Facebook page which has invited all others to comment and participate. It is unreasonable and disingenuous, within every U.S. District in light of the separation clause of the U.S. Constitution---that any U.S. citizen remain silent on this separation of church and state; which as plead in [doc 62] continues in the District of Utah to be non-existent where **"government may not censor a motion picture (and that of speech) because it is offensive to religious beliefs"**, see Burstyn v. Wilson, 72 S. Ct. 777 (1952).

> *"Potentially more analogous are cases in which a unit of government creates a limited public forum for private speech.* See, e.g., Good News Club v. Milford Central School, 533 U. S. 98, 106–107 (2001); Rosenberger v. Rector and Visitors of Univ. of Va., 515 U. S. 819, 831 (1995); Lamb's Chapel, 508 U. S., at 392–393

Wherefore Plaintiff asks this Court to carefully examine the already plead admissions of many of these defendants, the merits of this case as the liberties which every resident of the District has in past—and in the future—will continue to face as questions of known constitutionality outlasting any one presidential administration.

Plaintiff, resulting from this plead, cites an apprehension of greater scrutiny and obstacles in this case and District.

This current loss of voice and participation to this plaintiff is weighed in the interest of the public of this republic—far beyond the potentiality of any form of bias in deciding this case as a known diminished and withheld equity in Utah.

In defense of Magistrate Dustin B. Pead, he is fully qualified to act in the capacity of magistrate. Plaintiff has not witnessed to date, an action creating reprehension beyond a cited statutory concern as 28 U.S.CODE § 455(a)(b)(1)(5)(iii). It is not a personal question posed this court.

Plaintiff pleads these matters are sufficiently concerning in the interest of both the republic and its public – significantly more so as the population dynamic of the country evolves. and will continue to be in the public interest as the Free Exercise Clause.

Respectfully submitted,

_Aaron Johnson_

Aaron Johnson

Plaintiff Pro Se

## CERTIFICATE OF MAILING

I certify that on [Tuesday, May 3, 2018], I filed the foregoing PLAINTIFF'S MOTION AND MEMORANDUM TO RECUSE MAGISTRATE JUSTIN D. PEAD PURSUANT 28 U.S. CODE § 455(a)(b)(1)(5)(iii)with the Clerk of the Court. I also certify that a true and correct copy of the foregoing was placed in outgoing, US Mail, postage prepaid, to the following counsel of record:

State's Executive Counsel Kyle Kaiser

Office of the Attorney General

160 East 300 South, Sixth floor

Salt Lake City, Utah 84114

Telephone: (801) 366-0100


Legislative Defendants' Counsel

Christine Gilbert / Eric Weeks

Office of Legislative Research and General Counsel

Utah State Capitol Complex House Building, Suite W210

Salt Lake City, Utah 84114

Telephone: (801) 538-1032

_____
Aaron Johnson

Plaintiff Pro Se